**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TIMOTHY G. MARTIN,<br>    Plaintiff, | : <br> : <br> : | CIVIL ACTION NO.<br>3:16-CV-00933 (JCH) |
| v. | : <br> : | |
| TOWN OF SIMSBURY, ET AL.<br>    Defendants, | : <br> : <br> : | MAY 2, 2017 |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (DOC. NO. 25)**

**I.    INTRODUCTION**

The plaintiff, Timothy Martin, brings this action against the defendants, the Town of Simsbury, Hiram Peck, Howard Beach, Michael Glidden, Margery C.B. Winters, Darren Cunningham, Jason Levy, Craig MacCormac, Jim Morrison, Donna Beinstein, and Donald Reiger ("defendants"), alleging federal constitutional claims of a regulatory taking and violations of substantive and procedural due process and equal protection under sections 1983, 1985, and 1988 of title 42 of the United States Code, as well as state law claims of intentional infliction of emotion distress, negligence, negligent infliction of emotional distress, and inverse condemnation. Am. Compl. This action arises from Martin's interactions with the Simsbury Zoning Board regarding his desire to build a single-family home on a parcel of land.

The defendants bring this Motion to Dismiss (Doc. No. 25) under Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction over the Amended Complaint, insufficient service of process as to defendant Beach, and failure to state a claim upon which relief can be granted. Def.'s Mem. of Law in Support of Mot. to Dismiss ("Def.'s Mem.") at 1 (Doc. No. 25-1). They argue,

1

inter alia, that Martin's claim is not yet ripe for review because he has failed to obtain a final decision from the relevant zoning authority. Id. at 1-2.

Because the court concludes that it has no subject matter jurisdiction over Martin's claims because he has not sought and received a final decision from the relevant authorities, the Motion to Dismiss is **GRANTED**.

## II. FACTUAL ALLEGATIONS

When considering a motion to dismiss due to lack of subject matter jurisdiction under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [the Court is] not to draw inferences from the complaint favorable" to the party asserting jurisdiction. J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).

The following facts are alleged in the Amended Complaint and, as such, the court accepts them as true for the purposes of deciding the Motion to Dismiss. Id. Martin owns a parcel of land ("the Property") in Simsbury, Connecticut, which was designated by the Simsbury Assessor's Map D03, Block 208, Lot 003A. Am. Compl. (Doc. No. 12) at ¶ 2. The lot was created under the "Free/First Cut" section of the Simsbury Zoning Regulations. Id. at ¶ 4. Former Simsbury Compliance Officer and defendant, Howard Beach ("Beach") helped design the map for the land split, and subsequently approved and signed the map before it was filed in the Town Clerk's office as Town of Simsbury map #3976 ("map"). Id. The Property was then appraised by the Town Assessor at a value of $118,000, and subsequently taxed at approximately $3,200 per year. Id. at ¶ 7.

On some unspecified date, Martin applied to the Farmington Valley Health District ("FVHD") for a septic permit on the Property. Id. at ¶ 10. The FVHD and the defendants then demanded that Martin "unnecessarily" redesign the proposed system

2

several times, which he did. Id. at ¶ 11. The FVHD and the defendants still rejected his septic permit application because they claimed that his soil test results were erroneous. Id. The FVHD and the defendants rejected Martin's offer to retest the soil on the condition that the FVHD would issue the septic permit if the second test had a consistent result. Id. at ¶ 12. Martin appealed to the State of Connecticut Health Department, with the result that Martin retested the soil in the presence of an indifferent sanitarian, the Town of Simsbury attorney, and the engineer who did the original tests. Id. at ¶ 13. The test results were consistent with his original tests, and the septic permit was issued. Id. Martin alleges that no other applicant was ever forced to go to such lengths or expense to verify the accuracy of soil tests performed by licensed engineers. Id.

Next, Martin alleges that the Town and Beach informed Martin by letter on January 30, 2015, that, although the official approved inland wetlands map for the Town of Simsbury did not place the Property on wetlands, they would not issue a building permit until Martin had conducted a full wetlands investigation of the Property. Id. at ¶ 14. Martin alleges that there are no inland wetlands on or near the Property according to the official inland wetlands map. Id. at ¶ 16. The Town of Simsbury, Michael Glidden ("Glidden"), the Zoning Enforcement Officer, Hiram Peck, the Town Planner, and Beach were aware of an unofficial and unapproved map of the wetlands for years, but Martin alleges that he was the only person that they ever imposed it on. Id. at ¶¶ 5, 7, 18, 20. Martin spent several months pleading with them that it was unfair and unconstitutional to make him test for wetlands when no one else in the area had to do so. Id. at ¶ 19.

Beach retired, and his successor, Glidden, also required Martin to conduct a full wetlands investigation of the Property. Id. at ¶ 20. Martin alleges that at least dozens, if not hundreds, of lots in the town were developed with the approval of Beach, Glidden, and Peck as their supervisor, and despite their location on the unofficial wetland map. Id. at ¶ 21. These other individuals were not required to do a wetlands investigation because their property was not located on the official inland wetlands map. Id.

Instead of performing a wetlands investigation, Martin chose to apply for a building permit. Id. at ¶ 22. Glidden responded to the application March 4, 2015, insisting that Martin do the wetlands testing before a building permit could issue, but also informing Martin that the Property was not, in fact, a building lot. Id. Glidden determined that the Property had never been approved as a building lot because it lacked the required 200 feet of street frontage. Id. at ¶ 36. Glidden's letter also threatened criminal action against Martin for advertising to sell the Property because it was an unapproved lot. Id. Martin filed an appeal of Glidden's rejection, first with the Inland Wetlands Agency for the Town of Simsbury, and then with the Connecticut State Superior Court, but both denied the appeal. Id. at ¶ 24-25. The Superior Court dismissed Martin's case because he had not exhausted all available administrative remedies. Id. at ¶ 25; see, also, Martin v. Town of Simsbury, No. CV 155039449, 2016 WL 673417 (Conn. Super. Ct. Jan. 26, 2016) (holding that Martin did not take advantage of the process to determine whether or not his activity was regulated such that he required a wetland permit and so he had not exhausted his administrative remedies).

4

On April 11, 2016, Martin requested that the Town of Simsbury Conservation Commission ("the Commission") give him a definitive answer as to whether his application would be considered under the unofficial inland wetlands map. Id. at ¶ 32. Martin alleges that the Conservation Commission, and defendants Winters, Cunningham, Levy, MacCormac, Morrison, Beinstein, and Reiger voted to evaluate the Property under the unofficial inlands wetland map, and admitted that the official/approved map was erroneous and they were acting contrary to law. Id. at ¶ 33. Martin was unaware of any appeal process from this decision, and letters to the Town of Simsbury Attorney and the Conservation Committee received no response. Id. at ¶ 35. Importantly, the Amended Complaint does not allege that Martin requested that the Commission determine whether or not his activity would have a significant impact such that he need not apply for a permit, or what the consequence of evaluating the Property using the unofficial map were. See Town of Simsbury Inland Wetlands Regulations, Section 7.1, 7.4.1 (2013) (describing the wetlands permit application process).

Finally, Martin filed an appeal of Glidden's decision that the lot was not a legal building lot with the Town of Simsbury Zoning Board of Appeals ("ZBA"). Id. at ¶ 39. The ZBA affirmed Glidden's decision. Id. at ¶ 44. The defendants suggested that Martin merge the Property with a neighboring property, or apply for a rear lot subdivision, which might allow him to develop the Property. Id. at 45.

Martin then applied to the ZBA for a variance of the required road frontage for the Property, but this too was rejected. Id. at ¶ 47. Based upon the foregoing, Martin alleges that there has been an unconstitutional taking of his property, and he has served the Town of Simsbury with a demand for compensation. Id. at ¶ 48.

5

## III. LEGAL STANDARD

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court must dismiss a complaint for lack of subject matter jurisdiction when the court lacks constitutional authority to adjudicate the suit. Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, and draw all inferences in the plaintiff's favor. Id. The court may rely on evidence outside of the complaint in determining whether it has jurisdiction. Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.á.r.l., 790 F.3d 411, 417 (2d Cir. 2015). In considering a Rule 12(b)(1) motion, the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

## IV. DISCUSSION

### A. Ripeness

Before the court can consider the merits of the plaintiff's complaint, the court must ensure that the controversy is ripe. See Nutritional Health All. v. Shalala, 144 F.3d 220, 225 (2d Cir. 1998) ("Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts."). To fulfill this constitutional requirement, the controversy must have crystallized such that the claims do not depend upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2013) (citing Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985)). "The Ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to

6

exercise jurisdiction." Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803 (2003) (internal quotation marks omitted).

In the takings context, the court considers whether a claim is ripe through a two-pronged test announced in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985). The first prong requires that the government entity charged with implementing the regulations has made a "final decision regarding the application of the regulations to the property at issue." Id. at 186. The second prong requires the plaintiff to have sought and failed to receive just compensation through an adequate process provided by law. Id. at 194.

The first prong of Williamson County captures the Constitutional requirement that there be injury in fact. See Horne v. Dep't of Agriculture, 133 S. Ct. 2053, 2061-62 (2013) (holding that the final agency decision imposing fines was a "sufficient 'injury' for federal jurisdiction). The Second Circuit, however, has clarified that the final decision requirement is a prudential rule, not a jurisdictional one, thereby allowing a court to determine that Williamson's final decision requirement be waived because the zoning authority had otherwise inflicted constitutional injuries sufficient for the plaintiff to assert standing. See Sherman v. Town of Chester, 752 F.3d 554 (2d Cir. 2014) (allowing a takings claim to proceed on a theory that seeking a final decision would be futile when over a decade of consistent procedural changes had already allowed the town to avoid making a final decision). The proper inquiry is whether the court can accurately determine how far the regulation goes—i.e., what behavior does it deny and what behavior does it permit—such that the court can determine whether or not a taking has occurred. This can be shown either through the agency's final determination, or through

7

a set of facts that demonstrate that the glimmer of hope that the agency has left is not truly achievable such that the court may view the agency as having made a final decision in all but fact. See id.

Similarly, the second prong—that the Government not only take property, but also deny just compensation—has been described as prudential ripeness, and as such "is not, strictly speaking, jurisdictional. See Horne, 133 S. Ct, at 2062, 2062 n.6 ("A 'Case' or 'Controversy' exists once the government has taken private property without paying for it. Accordingly, whether an alternative remedy exists does not affect the jurisdiction of the federal court."); see also Stop the Beach Renourishment, Inc. v. Florida Dept. of Environ. Prot., 560 U.S. 702, 729 (2010) (deeming that the plaintiff waived the argument that they had not received just compensation because that argument was not jurisdictional). Still, the Fifth Amendment only prohibits the taking of private property for public use "without just compensation," and so the court cannot determine whether a taking violated the Fifth Amendment without some evidence that the plaintiff was denied just compensation. U.S. Const. amend. V; see Macdonald, Sommer & Frates v. Yolo Cty., 477 U.S. 340, 360 (1986) ("For similar reasons, a court cannot determine whether a municipality has failed to provide 'just compensation' until it knows what, if any, compensation the responsible administrative body intends to provide.").

This prudential ripeness assessment of Williamson County has been extended to apply to other claims that stem from alleged takings. "[A] substantive due process claim premised on the theory that a regulation has gone too far is subject to both prongs of the Williamson ripeness test." Southview Associates, Ltd. V. Bongartz, 980 F.2d 84, 96

(1992). Similarly, "the ripeness requirement of Williamson, although announced in a takings context, has been extended to equal protection and due process claims asserted in the context of land use challenges." Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 89 (2d Cir. 2002). Substantive due process claims of arbitrary and capricious conduct only require satisfaction of the first prong of Williamson, namely that there be a showing of finality. Kurtz v. Verizon New York, Inc., 758 F.3d 506, 514 (2014).

Thus, before the court can consider the merits of Martin's constitutional claims, the court must first determine that both prongs of Williamson County have been met as to his equal protection claims and his due process claim that a regulation has gone too far, and that the final decision prong has been met as to his arbitrary and capricious conduct claims. If the court determines that the prongs of Williamson County have not been met, the court should then determine whether or not the plaintiff has shown that despite failing to meet requirements of Williamson County, the matter is still properly before the court. See Sherman, 752 F.3d at 563 (allowing a claim to proceed despite the lack of a final decision because the court found that the government's actions had been "so unreasonable, duplicative, or unjust as to make the conduct farcical," and therefore further pursue a final decision would be futile.).

    1.    There has been no final decision by the Zoning Board

The first prong of the Williamson County test requires the plaintiff to demonstrate by a preponderance of the evidence that the relevant agency has made a final decision on how the plaintiff can develop his or her property. See 473 U.S. at 190-91. The Supreme Court has recognized that the inquiry of what precisely constitutes a "taking" for the purposes of the Fifth Amendment is a difficult one, and one that cannot be

accomplished when the precise contours of the regulatory decision are yet unknown because the government has not issued a final decision. Id. at 191. In Williamson County, the plaintiff had been denied approval of a building permit, but had not sought a variance, and so the court could "not conclusively determine whether respondent will be denied all reasonable beneficial use." Id. at 194. Absent such a final decision, further review by the court was deemed premature.

Later opinions have clarified that the final decision prong of the Williamson County test is a factual determination which must take into account all relevant statutes, ordinances, and regulations, in order to determine whether or not there has been a final determination of how the property owner can use his property. Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 350 (2d Cir. 2005). The question before the court is "whether the initial decisionmaker has arrived at a definite position on the issue that inflicts an actual, concrete injury." Williamson County, 473 U.S. at 193.

The Second Circuit has explained that the "final decision" prong serves four goals: (1) a final decision from the land use authority provides the court with a complete record to review; (2) the court can only know the precise way that a regulation will be applied to a parcel after the owner of that parcel has pursued all of the remedies available to him; (3) an appeal may provide the property owner with relief without entangling the district court in a constitutional dispute; and (4) federalism concerns counsel allowing local matters to be handled locally before involving federal courts. Murphy, 402 F.3d at 348.

Applying these principles to the matter at hand, it is clear to the court that Martin has not received a final determination from the zoning authority on how he may use the

Property. The Amended Complaint first discusses the decision of the Commission regarding the inland wetlands regulations. See Am. Compl. at ¶¶ 9-35. However, Martin does not allege what the consequences of the determination of the Commission were, and the Complaint moves on to describe only the consequences of the denial of his variance. Id. at ¶ 36. Martin does allege that he appealed the decision of the Commission to the State of Connecticut Superior Court, but that court ruled that Martin had not exhausted all of his administrative remedies, specifically because he did not apply to the Commission for a permit to allow him to pursue his desired development. Id. at ¶ 25; Martin v. Town of Simsbury, No. CV 155039449, 2016 WL 673417 (Conn. Super. Ct. Jan. 26, 2016). Martin has not alleged that he applied to the Commission for a finding that his activity would not be a regulated activity; rather, he states that because he is under the belief his activity is not regulated, he does not need to apply to the Commission. Id. at ¶ 26. Martin's own legal conclusion, without any interpretation from the governing administrative body, cannot satisfy the final decision requirement of Williamson County. See Conyer v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009) ("on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citations omitted).

Indeed, Martin does not allege that he did more than ask the Commission whether or not it would hold him to an unofficial map or the official map. Id. at 32-35. Although the Amended Complaint alleges that the Property has—erroneously, according to Martin—been determined to be on wetlands, the Amended Complaint does not allege that the Commission considered what Martin could or could not do on the wetlands. Martin does not allege that he ever applied for an inland wetland permit, and

11

the court cannot rely on his legal conclusion that he was not asking to conduct regulated activity. Am. Compl. at ¶ 26; see Town of Simsbury Inland Wetlands Regulations, Section 2.1 (2013) (defining regulated activity as any activity "involving, but not limited to the removal or deposition of material, or any obstruction, alteration or pollution of such Regulated Area and any earth moving, filling, construction . . . with the Regulated Area . . . ."). The Amended Complaint alleges no facts that would allow this court to determine that the disposition of the Property has changed since the Connecticut Superior Court reviewed the matter and determined that Martin had not exhausted his administrative remedies because he had not applied to the Commission for a permit. Martin v. Simsbury, No. HHDCV155039449, 2016 WL 673417 at * 2 (Conn. Super. Ct. Jan. 26, 2016). Because Martin has not alleged that he requested a final decision from the Commission regarding what would be permitted on the Property, the court cannot determine whether or not a taking has taken place.

The Amended Complaint next describes how Martin applied for a building permit on the Property, which was ultimately denied because the land was not a building lot. Am. Compl. at ¶ 22. The primary issue was that the Property only has 50 feet of the required 200 feet of street frontage. Id. at 36. Martin attempted to solve this issue by applying for a variance of the 200 foot requirement, but this application was ultimately denied. Id. at 47.

Defendants supplement the information provided in the Complaint with an affidavit from Glidden, the Assistant Town Planner for the Town of Simsbury. Aff. of Michael Glidden (Doc. No. 25-2). Glidden describes the comments he made to the ZBA in connection with Martin's application for a variance. Id. at ¶ 6. Specifically, Glidden

12

informed the ZBA that Martin had been informed that, although his building did not conform to the requirements for a building permit, it might conform to the requirements for a rear lot. Id. at Ex. C. Glidden explained that development under the rear lot regulations does not require the frontage otherwise required, but that Martin would need to apply for a special exception from the Simsbury Planning and Zoning Commission in order to proceed under those regulations. Id. at ¶ 7. The court is entitled to consider this evidence, even though it comes from beyond the four corners of the Amended Complaint, in connection with determining whether it has jurisdiction to hear the merits of Martin's Amended Complaint. See Cortlandt Street Recovery Corp. v. Hellas Telecomms, S.á.r.l., 790 F.3d 411, 417 (2d Cir. 2015).

Martin responds to these representations with a conclusory statement that it would be "impossible for this lot to qualify for any such division as a rear lot subdivision . . . ." Pl.'s Resp. to Defs.' Mot. to Dismiss Am. Compl. and Request for Oral Arg. ("Pl.'s Resp.") (Doc. No. 30) at 4-5. Without some factual basis to substantiate this, Martin's own interpretation of the regulation is not sufficient to plausibly ripen his claims. The relevant decision-maker, Glidden, has indicated that an application for a rear lot exception would be a worthwhile pursuit for Martin. Aff. of Glidden at ¶ 7.

These facts demonstrate that Martin has not yet received a final decision as to what the permitted uses of the Property are. Martin has only applied for, and the ZBA has only denied, a single variance. The communications from Glidden indicate that he is open to exploring the possibility of a rear lot exception, if Martin would submit the application for it. See Aff. of Michael Glidden at ¶ 7. Indeed the Zoning Regulations of the Town of Simsbury expressly allow for rear lot development with no street frontage at

13

all.  Zoning Regulations of the Town of Simsbury, C.8 (Dec. 30, 2016).  The claim is therefore not ripe because of the possibility that "some development will be permitted," despite the fact that a single variance has been applied for and denied.  See MacDonald, Sommer & Frates v. Cty. of Yolo, 477 U.S. 340, 351-52 (1986) (rejecting a claim as unripe because the decisions that had been rendered by the local governing body did not foreclose the possibility that some development of the land would be permitted).  Because Martin has not demonstrated by a preponderance of the evidence that the ZBA would deny approval for all uses such that there no longer existed the possibility that some development would be permitted, Martin's federal claims—Counts One, Two, and Three—are not ripe for review.  See Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 98 (2d Cir. 1992) (collecting Supreme Court decisions clarifying the final decision requirement).

Martin has also not shown that any further application would be futile.  "[I]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  By reference to Sherman v. Town of Chester, 752 F.3d 554 (2d Cir. 2014), Martin appears to advance the argument that, based on his prior interactions with the town zoning authorities, further applications would be futile.  Pl.'s Resp. at 6.  Based on the record before the court, the court does not agree.

As described above, the assistant town planner explicitly told Martin that a possible solution to his zoning problems existed in the rear lot regulations.  Aff. of Glidden at ¶ 7.  Indeed, Glidden explained this precise idea to Martin in a letter dated

March 4, 2015.  Ex. D to Aff. of Glidden.  Although it is by no means assured that Martin will be successful in his pursuit of a special exception for a rear lot division, Glidden's letter certainly does not suggest that an application for such an exception would be futile.  Sherman, which Martin cites for the proposition that the court should consider the merits of his case because the zoning board has effected a non-categorical taking, is readily distinguishable.  In Sherman, the plaintiff was subjected to decades of regulatory changes and inquests by the town zoning authority, including a moratorium on subdivision approvals which was admittedly implemented to specifically stop the plaintiff's development, numerous changes to the zoning requirement during the application process, and monthly lists of demands for new studies.  Sherman, 752 F.3d at 558-560.

Here, Martin has made a single application to the town planner for a building permit, and a single application for a variance, both of which were denied.  See Am. Compl. at ¶¶ 36, 47.  He was also informed that the zoning authorities believed there existed a workable solution within the existing zoning regulations.  Aff. of Glidden at ¶ 7.  This is markedly different from the extreme circumstances of Sherman, such that the court concludes that further pursuit of a zoning decision by the local authorities would not be futile.  There is no indication that any of the defendants have been moving the finish line such that Martin will never be able to obtain a final decision.  Cf. Sherman, 752 F.3d at 563 (describing the Town's tactic of avoiding a final decision by moving the finish line, driving Sherman to the point of financial exhaustion over the course of ten years).

Indeed, finding that Martin's claims are unripe comports with the policies underlying the ripeness test of Williamson County. First, once the zoning authorities determine whether or not it is possible to build on the Property as a rear lot, the court will have a complete record from which to analyze Martin's taking claims. Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348 (2d Cir. 2005). Second, only by pursuing all available regulatory remedies can the court assess whether there truly has been a taking. Id. Third, it is also possible that the alternative avenues available to Martin would result in a use of the Property that leaves him content, such that Martin will be afforded relief without "entangling the district court in a constitutional dispute." Id. Finally, pursuing further local accommodations respects the federal system by not inserting the federal judiciary in a pending local matter. Id.

The court concludes that there has been no "final decision" regarding Martin's use of the Property, and therefore the court does not have subject matter jurisdiction over his constitutional claims regarding the same. Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186-87 (1985); Southview Associates, Ltd. V. Bongartz, 980 F.2d 84, 96 (1992) (extending Williamson County to Due Process claims stemming from a regulatory decision regarding land use); Kurtz v. Verizon New York, Inc., 758 F.3d 506, 514 (2014) (holding that substantive due process claims of arbitrary and capricious conduct in the takings context require the first prong of Williamson County to be met). Thus, prong one of Williamson County cannot be met based on the plausible allegations of facts in the Amended Complaint. Accordingly, Counts One, Two, and Three are therefore dismissed for lack of subject-matter jurisdiction.

B. <u>Supplemental Jurisdiction over Counts 4, 5, 6, and 7</u>

Having dismissed all of the federal claims in the Complaint because they are not yet ripe, the court must next consider whether it should exercise supplemental jurisdiction over the remaining state law claims for intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, and inverse condemnation. See Am. Compl. at ¶¶ 61-84. Section 1367(c)(3) of title 28 of the United States Code provides that the court may "decline to exercise supplemental jurisdiction over a [state law] claim" if it "has dismissed all claims over which it has original jurisdiction." The Second Circuit has instructed the district courts that, "if a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well.'" Brzak v. United Nations, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008)). Having determined that the court lacks jurisdiction to decide the federal claims asserted in the complaint, the court will decline to exercise supplemental jurisdiction over the state claims.

**V.  CONCLUSION**

Defendants' Motion to Dismiss (Doc. No. 25) is **GRANTED**. The court has no jurisdiction to proceed to consider the merits of Martin's federal claims because they are not yet ripe. Therefore, Counts 1, 2, and 3, are dismissed. The court declines to exercise supplemental jurisdiction over Counts 4, 5, 6, and 7, the remaining state law claims. The Complaint is therefore dismissed in its entirety.

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of May, 2017.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge