UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIMOTHY G. MARTIN<br>*Plaintiff*, | )<br>)<br>) | 3:16-CV-00933 (KAD) |
| v. | )<br>) | |
| TOWN OF SIMSBURY, ET AL.<br>*Defendants*. | )<br>) | August 28, 2019 |

## MEMORANDUM OF DECISION ON
## THE DEFENDANTS' MOTION TO DISMISS

This action arises out of the Plaintiff's effort to develop a piece of property in Simsbury, Connecticut (the "Property"). The Defendants include the Town of Simsbury (the "Town"), employees of the Town and certain members of both the Zoning Board and the Wetlands Commission. The Defendants filed a motion to dismiss (ECF No. 83)[1] asserting that the Court lacked subject matter jurisdiction over the constitutional "takings" claim (Count One and Count Two) because the Plaintiff had not exhausted his state court remedies prior to commencing this action. The Defendants further asserted that the Plaintiff has not adequately pleaded an inverse condemnation claim (Count Seven). For the following reasons, the Motion to Dismiss Counts One, Two and Seven is DENIED.

**Procedural History**

The Plaintiff commenced this action on June 15, 2016 against the Town and other Town officials alleging federal constitutional claims of a regulatory taking and violations of substantive and procedural due process and equal protection under sections 1983, 1985, and 1988 of title 42 of the United States Code, as well as state law claims. By motion dated September 15, 2016,

---

[1] The Court previously ruled on a number of issues raised in the Defendant's Motion to Dismiss during the March 21, 2019 hearing. Herein, the Court decides all remaining issues.

each Defendant sought dismissal of the case on a variety of bases, to include questions of subject matter jurisdiction, as well as claims that the Plaintiff had failed to state a claim upon which relief might be granted (ECF No. 25). The omnibus motion was granted by the Court (Hall, J.) on May 2, 2017 (ECF No. 58) on the limited issue of ripeness. The other issues raised in the motion to dismiss were not addressed in the Court's decision.

The Plaintiff appealed the decision to the Second Circuit Court of Appeals, which vacated the decision and remanded the case for further proceedings on May 29, 2018 (ECF No. 67). On remand, the Defendants again moved to dismiss the complaint (ECF No. 83) raising the issues that were not previously decided. Briefing on the Motion to Dismiss was extended over the course of several months. The Court heard oral argument on the Motion to Dismiss on March 21, 2019. Following a hearing on the Motion to Dismiss, the Court granted the motion, in part, and dismissed Count One, Equal Protection[2] and Due Process; Count Two, Supervisory Liability, to the extent the claim encompasses the Equal Protection and Due Process claims in Count One; Count Three, Conspiracy; Count Four, Intentional Infliction of Emotional Distress; Count Five, Negligence; and Count Six, Negligent Infliction of Emotional Distress. The Court reserved on the motion with respect to Count Seven, Inverse Condemnation; Count One, Regulatory Taking; and Count Two, Supervisory Liability, to the extent the claim encompasses the Takings claim in Count One. Separately, the Court also took up the issue of whether the claims against Defendant Mr. Beach should be dismissed for failure to effect service, and whether the Plaintiff should be given more time to do so. By Order (ECF No. 136) dated June 19, 2019, all remaining claims against Defendant Mr. Beach were dismissed.

---

[2] The dismissal of the Equal Protection claim was without prejudice. Plaintiff may replead this claim if he can identify comparators for purposes of his "class of one" theory of liability.

**Allegations**

As previously summarized by the Court (Hall, J.), the Plaintiff's allegations are as follows:

"Martin owns a parcel of land ("the Property") in Simsbury, Connecticut, which was designated by the Simsbury Assessor's Map D03, Block 208, Lot 003A. The lot was created under the "Free/First Cut" section of the Simsbury Zoning Regulations. Former Simsbury Compliance Officer … Howard Beach ("Beach") helped design the map for the land split, and subsequently approved and signed the map before it was filed in the Town Clerk's office as Town of Simsbury map #3976 ("map"). The Property was then appraised by the Town Assessor at a value of $118,000, and subsequently taxed at approximately $3,200 per year.

"On some unspecified date, Martin applied to the Farmington Valley Health District ("FVHD") for a septic permit on the Property. The FVHD and the defendants then demanded that Martin "unnecessarily" redesign the proposed system several times, which he did. The FVHD and the defendants still rejected his septic permit application because they claimed that his soil test results were erroneous. The FVHD and the defendants rejected Martin's offer to retest the soil on the condition that the FVHD would issue the septic permit if the second test had a consistent result. Martin appealed to the State of Connecticut Health Department, with the result that Martin retested the soil in the presence of an indifferent sanitarian, the Town of Simsbury attorney, and the engineer who did the original tests. The test results were consistent with his original tests, and the septic permit was issued.

"Martin alleges that no other applicant was ever forced to go to such lengths or expense to verify the accuracy of soil tests performed by licensed engineers. Next, Martin alleges that the Town and Beach informed Martin by letter on January 30, 2015, that, although the official

approved inland wetlands map for the Town of Simsbury did not place the Property on wetlands, they would not issue a building permit until Martin had conducted a full wetlands investigation of the Property. Martin alleges that there are no inland wetlands on or near the Property according to the official inland wetlands map. The Town of Simsbury, Michael Glidden ("Glidden"), the Zoning Enforcement Officer, Hiram Peck, the Town Planner, and Beach were aware of an unofficial and unapproved map of the wetlands for years, but Martin alleges that he was the only person that they ever imposed it on. Martin spent several months pleading with them that it was unfair and unconstitutional to make him test for wetlands when no one else in the area had to do so. Beach retired, and his successor, Glidden, also required Martin to conduct a full wetlands investigation of the Property. Martin alleges that at least dozens, if not hundreds, of lots in the town were developed with the approval of Beach, Glidden, and Peck as their supervisor, and despite their location on the unofficial wetland map. These other individuals were not required to do a wetlands investigation because their property was not located on the official inland wetlands map. Instead of performing a wetlands investigation, Martin chose to apply for a building permit.

"Glidden responded to the application March 4, 2015, insisting that Martin do the wetlands testing before a building permit could issue, but also informing Martin that the Property was not, in fact, a building lot. Glidden determined that the Property had never been approved as a building lot because it lacked the required 200 feet of street frontage. Glidden's letter also threatened criminal action against Martin for advertising to sell the Property because it was an unapproved lot. Martin filed an appeal of Glidden's rejection, first with the Inland Wetlands Agency for the Town of Simsbury, and then with the Connecticut State Superior Court, but both denied the appeal. The Superior Court dismissed Martin's case because he had not exhausted all

4

available administrative remedies. On April 11, 2016, Martin requested that the Town of Simsbury Conservation Commission ("the Commission") give him a definitive answer as to whether his application would be considered under the unofficial inland wetlands map. Martin alleges that the Conservation Commission, and defendants Winters, Cunningham, Levy, MacCormac, Morrison, Beinstein, and Reiger voted to evaluate the Property under the unofficial inlands wetland map, and admitted that the official/approved map was erroneous and they were acting contrary to law. Martin was unaware of any appeal process from this decision, and letters to the Town of Simsbury Attorney and the Conservation Committee received no response.

"Finally, Martin filed an appeal of Glidden's decision that the lot was not a legal building lot with the Town of Simsbury Zoning Board of Appeals ("ZBA"). The ZBA affirmed Glidden's decision. The defendants suggested that Martin merge the Property with a neighboring property, or apply for a rear lot subdivision, which might allow him to develop the Property. Martin then applied to the ZBA for a variance of the required road frontage for the Property, but this too was rejected." *Martin v. Town of Simsbury*, No. 3:16-CV-00933 (JCH), 2017 WL 1702354, at *1–2 (D. Conn. May 2, 2017), *vacated*, 735 F. App'x 750 (2d Cir. 2018) (citations omitted).

As a result, the Plaintiff further alleges, specifically in Count Seven, that the property cannot be utilized as a residential single family building lot, the lot is "worthless", and that he has been denied the benefit of owning the property.

**Takings Clause Claim**

The Defendants sought dismissal of the Takings Clause claim pursuant to *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985), which held that a plaintiff bringing such a claim arising out of a local

5

land-use dispute must first seek compensation through an available state procedure before filing a complaint in federal court. *Id.* at 194. In *Knick v. Township of Scott, Pennsylvania,* 139 S. Ct. 2162 (2019), the Supreme Court overturned *Williamson County,* and held that no such requirement is mandated under the Fifth Amendment's Takings Clause. *Id*. at 2167. In light of this development in the law, it is clear, and the Defendants acknowledge[3], that the Motion to Dismiss the Takings claim should be and therefore is DENIED. To the extent Count Two asserts supervisory liability with respect to the Takings claim, the Motion to Dismiss is similarly denied.

**Inverse Condemnation**

Article First, Section 11 of the Connecticut Constitution provides: "The property of no person shall be taken for public use, without just compensation therefor." Conn. Const. Art. 1, § 11. This clause is oft used as the basis of an inverse condemnation action to recover compensation for property taken from private individuals. *See Laurel Inc. v. State,* 169 Conn. 195, 200 (1975); *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 380 (2d Cir. 1995); *see also Wellswood Columbia, LLC v. Town of Hebron,* 2013 WL 356619 (D. Conn. January 29, 2013) (collecting cases). Inverse condemnation claims may also be pursued as a Takings Clause claim under Fifth Amendment. *See First English Evangelical Lutheran Church of Glendale, v. Los Angeles County, California,* 482 U.S. 304 (1987) ("We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of the self-executing character of the constitutional provision with respect to compensation . . .") (quotations and citation omitted).

---

[3] Upon email inquiry to all parties from the Court, the Defendants acknowledged that their argument regarding the Takings claim was no longer viable in light of the *Knick* decision.

Here, the Plaintiff asserts a taking under the Fifth Amendment in Count One. Although he does not specify, the Court therefore construes Count Seven as a claim under Article First, Section 11 of the Connecticut Constitution.

The Connecticut Supreme Court applies the same analysis to claims brought under the state constitution as it does to those brought pursuant to the federal constitution. *See e.g.*, *Cumberland Farms, Inc. v. Town of Groton,* 262 Conn. 45, 73-76 (2002) (citing both state and federal constitutional jurisprudence when discussing the nature of and proof required to establish inverse condemnation claims); *Laurel,* 169 Conn. at 200-01 (defining the word "taken" as used in both the Fifth Amendment to the Constitution of the United States and Article First, Section 11 of the Connecticut Constitution). "Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency . . ." *City of Bristol v. Tilcon Minerals, Inc.,* 284 Conn. 55, 83 (2007). "Although property may be taken without any actual appropriation or physical intrusion . . . there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose . . . as where the economic utilization of the land is, for all practical purposes, destroyed . . . A constitutional taking occurs when there is a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." *Id*. at 84 (citations omitted).

Construed liberally, the Court finds that the allegations set forth above are sufficient to state a claim for inverse condemnation under Article First, Section 11 of the Connecticut Constitution. The Motion to Dismiss Count Seven is denied.

**Conclusion**

Previously, the Court dismissed the Equal Protection claim without prejudice to repleading if the Plaintiff could identify comparators for his "class of one" Equal Protection claim. The Court also suspended the Plaintiff's obligation to file the Amended Complaint pending resolution of the remaining claims in the Motion to Dismiss. Accordingly, the Plaintiff shall file an Amended Complaint, if he so chooses, on or before September 26, 2019.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of August 2019.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE